## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HOT SPRINGS DIVISION

**OMARION DICKENS**                                                                 **PLAINTIFF**

**v.**                          **CASE NO. 6:24-cv-06148-SOH**

**OUACHITA BAPTIST UNIVERSITY;**
**MICHAEL REYNOLDS**                                                    **DEFENDANTS**

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Ouachita Baptist University and Michael Reynolds, by and through their attorneys of HALL BOOTH SMITH, P.C., respectfully submit their Brief in Support of their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Abtin Mehdizadegan (#2013136)
Joseph M. Kraska (#2017182)
Jacob Oneal Sutter (#2023040)
**HALL BOOTH SMITH, P.C.**
200 River Market Avenue, Suite 500
Little Rock, Arkansas 72201
Phone:  501-214-3499
Fax:  501-604-5566
E-mail: abtin@hallboothsmith.com
         jkraska@hallboothsmith.com
         jsutter@hallboothsmith.com

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ 3

INTRODUCTION ........................................................................................................... 6

FACTS ALLEGED IN PLAINTIFF'S COMPLAINT ..................................................... 7

LEGAL STANDARD ...................................................................................................... 8

ARGUMENT .................................................................................................................. 8

I.     The Complaint Fails to State a Claim of Negligence Against Either Defendant. .... 9

II.    Dickens Fails to Plead Any Facts that Support a Claim Under the Arkansas Civil Rights Act Against Either Defendant. ................................................................. 12

III.   The Claims for Race Discrimination under Title VI Fail Because There is No Individual Liability, and his Bare Allegations Cannot Survive Rule 12(b)(6) Scrutiny. ............................................................................................................ 14

IV.    The Complaint Fails to State a Claim under 42 U.S.C. § 1981 Because a Single Alleged Occurrence of Harassment as Pleaded Here is Insufficient to Establish that the Terms and Conditions of Dickens's Education were Altered on the Basis of Race. ................................................................................................................. 17

V.     Dickens's Arkansas Crime Victim Claim Pursuant to ARK. CODE ANN. § 16-118-107 Should be Dismissed if the Court Exercises Supplemental Jurisdiction. ............. 19

VI.    OBU is Immune from Suit Under Arkansas's Charitable Immunity Doctrine. .... 21

CONCLUSION ............................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................. 7

*Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782 (8th Cir. 2011)...................... 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 7

*Bishop v. Tyson Foods, Inc.*, 660 F. Supp. 2d 1004 (W.D. Ark. 2009) ............................17

*Brown v. United Parcel Serv., Inc.*, 531 S.W.3d 427 (Ark. App. 2017)............................ 13

*Crossett Health Center v. Croswell*, 256 S.W.2d 548 (Ark. 1953) ...................................20

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ........15, 16

*Davis v. State*, 375 Ark. 368 (2009) ................................................................................. 18

*Devine v. Wilson*, 2024 WL 5161875, at *6 (E.D. Ark. Dec. 18, 2024) .............................11

*Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571 (8th Cir. 2021)................. 13

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) ................................................. 16

*Douglass v. Dynamic Enters., Inc.*, 315 Ark. 575, 868 S.W.2d 94 (1993) ....................... 19

*Evans v. Pemco Aeroplex, Inc.*, No. CV96-S-2801-S, 1998 WL 1048470 (N.D. Ala. Feb. 23, 1998) ........................................................................................................................17

*Fayetteville Sch. Dist. v. Ark. State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993) .... 12

*Fordyce v. Woman's Christian Nat. Library Ass'n*, 96 S.W. 155 (Ark. 1906)................20

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)........................................... 13

*George v. Jefferson Hosp. Ass'n*, 987 S.W.2d 710 (Ark. 1999) ........................................20

*Gill v. Baptist Health Med. Ctr.*, 2017 Ark. 225, 521 S.W.3d 443 (2017)........................ 12

*Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582 (1983) ................. 14

*Key v. Coryell*, 185 S.W.3d 98 (Ark. App. 2004)................................................................ 9

*Kroger Ltd. P'ship I v. Smith*, 93 Ark. App. 270, 218 S.W.3d 359 (2005)...................... 10

*Low v. Ins. Co. of N. Am.*, 220 S.W.3d 670 (Ark. 2005) .................................................. 21

*Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001).................................................. 9

*Martin v. Bemis Co.*, No. 04-cv-1048, 2006 WL 374785 (W.D. Ark. Feb. 10, 2006) ......17

*McCoy v. City of New York*, 131 F.Supp.2d 363 (E.D.N.Y. 2001)......................................17

*Michael v. St. Paul Mercury Indem. Co.*, 92 F.Supp. 140 (W.D. Ark. 1950) ................. 21

*Pinney v. State*, 609 S.W.3d 671 (Ark. App. 2020) ......................................................... 19

*Robinson v. Beaumont*, 725 S.W.2d 839 (Ark. 1987).......................................................20

*Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037 (E.D. Mo. 2014), *aff'd as modified sub nom.*, *Rodgers v. Curators of Univ. of Mo. Sys.*, 634 F. App'x 598 (8th Cir. 2015) ................................................................................................................ 15

*Roe v. St. Louis Univ.*, 746 F.3d 874 (8th Cir. 2014).................................................15, 16

*Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345 (8th Cir. 2020).......................... 13

*Satantic Temple, Inc. v. Lamar Advert. Co.*, 2023 WL 11821152 (W.D. Ark. May 26, 2023)............................................................................................................................. 13

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ......................................................................... 7

*Scott v. Dyno Nobel, Inc.*, 108 F.4th 615, 625 (8th Cir. 2024)......................................... 9

*Shotz v. City of Plantation, Fla.*, 344 F.3d 1161 (11th Cir. 2003) .................................. 14

*Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773 (8th Cir. 2001) ........................................... 15

*Skinner v. Switzer*, 562 U.S. 521 (2011) ......................................................................... 7

*St. Bernard's Community Hospital Corporation v. Cheney*, 625 S.W.3d 398 (Ark. App. 2021) ............................................................................................................................. 21

*Stacks v. Ark. Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754 (1989) ...................... 10

*Steel v. Alma Public School Dist.*, 162 F.Supp.2d 1083 (W.D. Ark. 2001)..................... 14

*Williams v. Jefferson Hospital Association, Inc.*, 442 S.W.2d 243 (Ark. 1969) .............20

**Statutes**

42 U.S.C. § 1981..............................................................................................................5, 16

42 U.S.C. § 2000d ............................................................................................................ 13

ARK. CODE ANN. § 16-118-107 .................................................................................. 17, 19

ARK. CODE ANN. § 16-123-107 ................................................................................... 11, 12

ARK. CODE ANN. § 23-79-210 ............................................................................ 21

ARK. CODE ANN. § 5-1-102 .............................................................................. 18

ARK. CODE ANN. § 5-13-201 ............................................................................ 18

ARK. CODE ANN. § 5-13-202 ............................................................................ 18

ARK. CODE ANN. § 5-13-205 ............................................................................ 18

ARK. CODE ANN. § 5-13-206 ............................................................................ 18

ARK. CODE ANN. § 5-13-207 ............................................................................ 18

ARK. CODE ANN. § 5-13-301 ............................................................................ 19

**Rules**

FED. R. CIV. P. 12 ............................................................................................ 7

## INTRODUCTION

Plaintiff Omarion Dickens (Dickens) filed this lawsuit over an alleged incident that occurred during classroom instruction while enrolled as a college student at Ouachita Baptist University (OBU). He asserts that on November 15, 2022, then-current Professor and Defendant Michael Reynolds placed a noose around his neck. From there, Dickens asserts three claims: (1) negligence,[1] (2) race discrimination in violation of the Arkansas Civil Rights Act (ACRA), 42 U.S.C. § 1981, and Title VI of the Civil Rights Act of 1964, and (3) claims pursuant to the Civil Action Against Crime Victims statute. Because the Complaint fails to satisfy this Court's notice pleading standard, Defendants move to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] As to Reynolds, individual liability does not exist under the ACRA, § 1981, or Title VI, and the Complaint fails to assert facts establishing negligence or a violation of the felony-tort statute. As to OBU, beyond its general immunity from suit as a charitable organization—which is expressly asserted in Section VI of Defendants' Argument—Plaintiff failed to assert facts establishing negligence, any violation of the

---

[1] Defendants respectfully submit that Paragraph 37 of the Complaint, which states that "Defendants had a duty to **BJ** as both a student as a **special needs student**, including but not limited to, instructing him using reasonable and teaching methods and ensuring that faculty are properly hired, trained, and retained[,]" contains a typographical error. Nearly identical allegations were asserted in Paragraph 15 of a separate, unrelated complaint filed by Plaintiff's counsel on behalf of Shanetra Frazier against the Little Rock School District on November 7, 2024, in Case No. 4:24-cv-968. Defendants do not believe that Plaintiff intended to refer to "BJ" in the Complaint or to otherwise suggest that Dickens is a special needs student. To the extent Plaintiff asserts that he was a "special needs student," Defendants respectfully request a more definite statement.

[2] Although Defendants recognize that the Court must accept all factual allegations as true for purposes of this Motion, Defendants deny all allegations of Plaintiff's Complaint generally and specifically, and recount the facts as alleged in the Complaint solely to supply context for why dismissal pursuant to Rule 12(b)(6) is appropriate.

ACRA's operative provisions, racial discrimination in connection with a contract, or that he suffered from conduct amounting to a felony in Arkansas. Each count of the Complaint should be dismissed on these bases.

### FACTS ALLEGED IN PLAINTIFF'S COMPLAINT

OBU is a private Christian university established as a non-profit corporation in Arkadelphia, Arkansas. *Dkt. 4*, at ¶¶ 3, 8. As of November 15, 2022, the date on which every allegation in the Complaint rests, Michael Reynolds was long-tenured kinesiology professor at OBU. *Id.* at ¶¶ 4, 15.

Dickens, a black male, was a football player who enrolled in Reynolds's "introductory lecture class on coaching" during the Fall 2022 semester. *Id.* at ¶¶ 13, 16. Many students who enrolled in that class were student-athletes, just like Dickens. *Id.* at ¶ 17. And by all accounts, Dickens was happy to be at OBU, at least until November 15, 2022. *Id.* at ¶ 31.

On November 15, 2022, Dickens arrived to Reynolds's classroom with another black student and noticed that Reynolds was holding a noose. *Id.* at ¶ 21. Reynolds made comments about this prop and asked students if it appeared to be the right size. *Id.* at ¶ 22. These comments were obviously made in jest because Reynolds was "laughing and/or smiling" while making these comments. *See id.* at ¶ 22. After the lecture began, Dickens alleges that "Reynolds suddenly tossed the rope around his neck," pulled it tight, and "cut off Dickens'[s] ability to respirate." *Id.* at ¶¶ 24–25, 27. Claiming physical pain, humiliation, and mental and emotional "hurt," *id.* at ¶ 26, Dickens alleged that "[t]he incident called to mind and heart the instances of unjustified, race-based violence that far too many black American [sic] endured at the hands of some white men over the years, especially in the South." *Id.* at ¶ 29. Notwithstanding, Dickens anticipates that Defendants

"will claim that this action was taken in furtherance of a lesson plan[,]" *id.* at ¶ 30, and he alleges that he was forced to endure a mock hanging while sitting down, listening to the lecture. *Id.* at ¶¶ 23, 28.

Despite these allegations, Dickens admits that he was able to finish the Fall 2022 semester and Spring 2023 semester before he eventually transferred to another school the following year. *Id.* at ¶ 34.

Professor Reynolds is no longer employed by OBU. *Id.* at ¶ 4.

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. When reviewing a Rule 12(b)(6) motion, the Court assumes the factual allegations of the complaint are true and construe them in plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); FED. R. CIV. P. 12(b)(6). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief "that is plausible on its face." *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The issue in determining a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether he is entitled to present evidence in support of his claims. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).

## ARGUMENT

Defendants respectfully move to dismiss the entirety of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Section I of Defendants' Argument explains that educational malpractice is not a legitimate theory of negligence,

intentional conduct cannot be repackaged as negligence, and the Complaint fails to identify a duty that was breached or any element of foreseeability.

Section II establishes that the ACRA claim must be dismissed because OBU is not alleged to be a public accommodation, the Complaint lacks allegations of a race-based discriminatory policy, practice, or custom, and that Reynolds is not a proper party for that claim.

Section III explains that Plaintiff's Title VI claims against Reynolds must be dismissed because there is no individual liability under Title VI, and that Plaintiff otherwise failed to plead facts necessary to maintain a Title VI claim against OBU.

Section IV demonstrates why Plaintiff's § 1981 claim fails, particularly where Plaintiff failed to identify a contractual right that was impaired, any comparators who were treated more favorably, or anything more than a single incident of alleged harassment.

In Section V, Defendants establish why the Arkansas felony-tort statute claim is unavailing against them, particularly in the absence of any statute establishing that the conduct alleged in the Complaint constitutes a felony under Arkansas law.

And finally, Section VI establishes a separate basis for dismissal as to OBU, which enjoys charitable immunity from suit.

## I.    The Complaint Fails to State a Claim of Negligence Against Either Defendant.

Dickens claims that Reynolds and OBU were negligent in their instruction of him. To state a claim for negligence under Arkansas law, a plaintiff must allege (1) the existence of a duty owed by the defendant, (2) a breach of that duty, (3) proximate causation, and (4) damages. *Scott v. Dyno Nobel, Inc.*, 108 F.4th 615, 625 (8th Cir. 2024).

The claim for negligence against Reynolds and OBU appears to have two parts. First, Dickens makes a claim for educational malpractice–a claim that does not exist in Arkansas. *Key v. Coryell*, 185 S.W.3d 98, 107 (Ark. App. 2004) (holding that a claim for educational malpractice does not exist because no workable standard of care is applicable to education). Indeed, Arkansas law does not recognize a general duty for a university to prevent all harm to students absent a special relationship or statutory obligation. Plaintiff fails to allege facts demonstrating that OBU owed him a legally cognizable duty beyond its general responsibility as an educational institution.

Plaintiff also fails to assert any facts in support of the naked legal conclusions that Defendants failed to properly hire, train, and retain its employees, and it is difficult to understand how Professor Reynolds could have negligently hired, trained, and retained himself. In fact, the Complaint does not assert that OBU owed Plaintiff any duty—rather, it claims that Defendants owed a duty to an unrelated party referred to as "BJ," a special needs student.

Assuming that Defendants' counsels' belief regarding Paragraph 37's typographical error is correct, to the extent that Dickens makes a claim for negligent supervision, Rule 12(b)(6) dismissal is still necessary. Liability for this cause of action is premised on the unique relationship between employer and employee. *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001). Under this theory, employers are subject to direct liability for the negligent supervision of employees when third parties are injured as a result of the tortious acts of employees. *Id*. The employer's liability rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm. As with any other negligence claim, to prove negligent supervision, a plaintiff must show that

the employer's conduct was a proximate cause of the injury and that the harm to third parties was foreseeable. *Id.* It is not necessary that the employer foresee the particular injury that occurred, only that he or she reasonably foresees an appreciable risk of harm to others. *Id.*

Here, there is no allegation in the Complaint that OBU knew or should have known that Reynolds's conduct created a risk of harm to others in this unique educational setting. Thus, the injuries that Dickens claims were not foreseeable. Likewise, Dickens complains about an intentional act, not a negligent one. Courts have consistently held that intentional torts cannot be repackaged as negligence claims. *See Stacks v. Ark. Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754, 757 (1989). Because Plaintiff's claim arises from allegedly deliberate conduct rather than negligent misjudgment, it fails as a matter of law.

Even if Plaintiff could establish duty and breach, he must also allege that Defendants' actions proximately caused his injuries. *See Kroger Co. v. Smith*, 93 Ark. App. 270, 218 S.W.3d 359 (2005). The complaint broadly asserts that Plaintiff suffered physical and emotional harm, but it fails to specify how the alleged breach of duty caused these damages in a manner distinct from the intentional act itself. Furthermore, the damages claimed—emotional distress and educational setbacks—are not ordinarily recoverable in negligence actions absent physical injury. *See Devine v. Wilson*, 2024 WL 5161875, at *6 (E.D. Ark. Dec. 18, 2024).

Because Plaintiff's allegations fail to establish a legally recognized duty, describe intentional conduct rather than negligence, and do not sufficiently plead proximate causation or recoverable damages, the negligence claim should be dismissed as a matter of law. Accordingly, Defendants respectfully request that the Court grant their Motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    Dickens Fails to Plead Any Facts that Support a Claim Under the Arkansas Civil Rights Act Against Either Defendant.

Plaintiff's ACRA claims must be dismissed because the Complaint does not allege that Defendants violated any right to the accommodations, advantages, facilities, or privileges of a public resort, accommodation, assemblage, or amusement, the right to engage in property transactions, the right to engage in credit and other contractual transactions, or the right to vote.

While the ACRA establishes that the "right of an otherwise qualified person to be free from discrimination because of race . . . is recognized as and declared to be a civil right[,]" the extent to which the Arkansas General Assembly created a private cause of action is exceedingly limited. The ACRA delineates between two categories of claims—employment claims, governed by ARK. CODE ANN. § 16-123-107(a)(1) and (c), which has no application here; and claims alleging a deprivation of the "right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement;" "the right to engage in property transactions without discrimination;" "the right to engage in credit and other contractual transactions without discrimination;" and "the right to vote and participate fully in the political process." ARK. CODE ANN. § 16-123-107(a)(2)-(5).

Indeed, subsection (b) explains that "[a]ny person who is injured by an intentional act of discrimination **in violation of subdivisions (a)(2)-(5) of this section shall have a civil action in a court of competent jurisdiction** to enjoin further violations, to recover compensatory and punitive damages, and, in the discretion of the court, to recover the cost of litigation and a reasonable attorney's fee." ARK. CODE ANN. § 16-123-107(b) (emphasis added).

Here, Plaintiff's Complaint fails to allege that Defendants deprived him the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement.[3] Nor does Plaintiff allege that Defendants somehow interfered with any property transaction. And nothing in the Complaint alleges that Defendants discriminated against Dickens on the basis of race in any credit or other contractual transaction. While Paragraph 12 of the Complaint alleges that Dickens had a financial aid agreement or enrolled at OBU pursuant to "other written instruments," he failed to describe how any contract was allegedly violated.

More than that, the ACRA does not impose liability on individual employees for alleged discrimination occurring within the scope of employment unless they qualify as "employers" under the statute. *See* ARK. CODE ANN. § 16-123-107(c)(1)(A). Plaintiff does not allege that Reynolds was his employer or had the authority to make employment-related decisions. Furthermore, individual liability for non-employment discrimination claims requires that the individual be a proprietor or manager of a place of public accommodation. *See, e.g, Satantic Temple, Inc. v. Lamar Advert. Co.*, 2023 WL 11821152, at *7 (W.D. Ark. May 26, 2023) (applying § 1981 framework to ACRA non-employment claims). Since Plaintiff does not allege that Reynolds operated OBU as a proprietor or decision-maker, the ACRA claim against him individually must be dismissed.

---

[3] Courts interpreting this provision of Arkansas law have held that private educational institutions are not places of "public accommodation" within the meaning of the statute unless they operate facilities open to the public at large, such as hotels or restaurants. *See Fayetteville Sch. Dist. v. Ark. State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993). OBU is a private religious institution that falls outside the Arkansas definition of "public accommodation."

Because the Complaint fails to state a claim against either OBU or Professor Reynolds, dismissal of all ACRA claims is mandatory under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III.   The Claims for Race Discrimination under Title VI Fail Because There is No Individual Liability, and his Bare Allegations Cannot Survive Rule 12(b)(6) Scrutiny.

Next, Dickens makes claims for race discrimination under Title VI, which is evaluated under the same standard that generally applies to ACRA claims. *Brown v. United Parcel Serv., Inc.*, 531 S.W.3d 427, 437 (Ark. App. 2017). Title VI prohibits race discrimination in any program receiving federal funds:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

To state a claim under Title VI, a plaintiff must allege that (1) the defendant received federal financial assistance, and (2) the plaintiff was subjected to racial discrimination under a program or activity receiving such assistance. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). The complaint makes a general assertion that OBU receives federal funding, but it does not specifically allege that the discriminatory conduct occurred within a federally funded program or activity. This omission is fatal to Plaintiff's Title VI claim.

More than that, a claim under Title VI "require[s] proof of intentional or purposeful discrimination." *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 580–81 (8th Cir. 2021) (citations omitted). To prove OBU's alleged discriminatory intent, Title VI plaintiffs must establish "that they were treated differently from others similarly

situated." *Id.* (citations omitted); *see Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345, 355 (8th Cir. 2020) (Title VI prima facie case requires showing that plaintiff was "treated differently from similarly situated students outside his protected class"). Alleged comparators must be "similarly situated in all relevant aspects." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 797 (8th Cir. 2011). There is no individual liability under Title VI. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1169 (11th Cir. 2003).

Here, Plaintiff's Complaint fails to assert that similarly situated students outside of Dickens's protected class were treated more favorably, and it makes no mention of any potential comparators. For a discrimination claim to proceed, these allegations are essential, yet missing from Plaintiff's Complaint. The lack of comparator allegations is alone sufficient to warrant dismissal under Rule 12(b)(6).

But more than that, Dickens does not contend that OBU barred his enrollment or otherwise denied him the opportunity to participate in its educational offerings. Instead, the Complaint describes an incident involving Professor Reynolds placing a noose around Plaintiff's neck, which is not explicitly linked to a discriminatory policy or practice affecting Plaintiff's access to educational benefits. Courts have repeatedly held that isolated acts, even if reprehensible, do not necessarily constitute a violation of Title VI unless they reflect a broader practice of racial exclusion or denial of benefits. *See Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 610 (1983). Because Plaintiff does not allege that OBU maintained a discriminatory policy or that the incident resulted in the denial of educational benefits, the claim must be dismissed.

To the extent that Dickens asserts that the environment after November 15, 2022 was so pervasively hostile that it amounted to discrimination, his claim is best understood as one of harassment. No matter how the issue is framed, there is no individual liability

under Title VI, so any claims against Reynolds must be dismissed. *Steel v. Alma Public School Dist.*, 162 F.Supp.2d 1083, 1085 (W.D. Ark. 2001) ("[I]n the Title IX context, that school officials may not be sued in their individual capacities . . .. As Title IX and Title VI are parallel to each other and operate in the same manner."). Thus, the claim brought pursuant to Title VI can only proceed against OBU.

But OBU can only be held liable for intentional acts as it cannot be held vicariously liable for the acts of an employee. *See, e.g., Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1048 (E.D. Mo. 2014), *aff'd as modified sub nom.*, *Rodgers v. Curators of Univ. of Mo. Sys.*, 634 F. App'x 598 (8th Cir. 2015). "An institution is only liable if it intentionally harassed or discriminated on the basis of race or nationality." *Id.*

Since OBU is a recipient of federal financial assistance, OBU may incur liability under Title VI only if it "acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (Title IX case). OBU "must be (1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (Title IX case). To be liable for harassment by one student against another, "an institution's deliberate indifference must either have caused the harassment or made students vulnerable to it." *Roe v. St. Louis Univ.*, 746 F.3d 874, 882 (8th Cir. 2014) (Title IX case). Furthermore, the harassment to which OBU was allegedly indifferent must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650.

Deliberate indifference is a stringent standard. *Roe*, 746 F.3d at 882. It is roughly parallel to an official decision not to remedy a violation. *Id.* An institution is not

deliberately indifferent because one employee on one occasion acted in a manner that a student found objectionable. *Davis*, 526 U.S. at 648. "In order to avoid deliberate indifference liability an institution 'must merely respond to known peer harassment in a manner that is not clearly unreasonable.'" *Roe*, 746 F.3d at 882 (quoting *Davis*, 526 U.S. at 648–49). This standard affords flexibility to school administrators. *Roe*, 746 F.3d at 882.

Thus, Dickens must plead and prove that OBU (1) knew of the harassment and (2) failed to respond to claims of harassment. In this case, there is only one alleged instance of harassment by Dickens. In fact, Dickens stated in his Complaint that "in the first few months of his college career, [he] was happy to be at OBU, engaged, and a well-performing student." *Dkt. 4*, at ¶ 31. Nowhere does Dickens plead that he reported his concerns to OBU's administration. Moreover, Dickens does not and cannot allege that he reported any concerns to OBU and that OBU was deliberately indifferent to those concerns.

For these reasons, Plaintiff's Title VI claims must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Reynolds is not a proper Defendant for a Title VI claim, and the Complaint fails to assert facts that state a claim under Title VI against OBU.

### IV. The Complaint Fails to State a Claim under 42 U.S.C. § 1981 Because a Single Alleged Occurrence of Harassment as Pleaded Here is Insufficient to Establish that the Terms and Conditions of Dickens's Education were Altered on the Basis of Race.

Dickens also asserts a claim pursuant to 42 U.S.C. § 1981. To state a claim under § 1981, a plaintiff must allege that he was deprived of the ability to make or enforce a contract due to racial discrimination. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Here, the Complaint does not identify a specific contractual relationship

that was impaired. Plaintiff's enrollment at OBU does not automatically confer a contractual right that was impeded by Defendants' actions, and the Complaint makes no reference to a contract or an impediment to forming that contract. Because § 1981 only applies to contractual interference, the claim must be dismissed.

Additionally, the law does not support a finding that a single instance of perceived harassment during classroom instruction, without more, supports a claim for racial harassment. *See Bishop v. Tyson Foods, Inc.*, 660 F. Supp. 2d 1004 (W.D. Ark. 2009) (holding that an isolated incident of displaying a hanging noose coupled with "KKK" comments did not rise to the level of severe or pervasive conduct to constitute a racially hostile environment); *Martin v. Bemis Co.*, No. 04-cv-1048, 2006 WL 374785 (W.D. Ark. Feb. 10, 2006) (a mannequin hanging in a noose, whose face had been darkened and hair curled to look like an afro, did not create an objectively hostile or abusive work environment); *McCoy v. City of New York*, 131 F.Supp.2d 363 (E.D.N.Y. 2001) (holding that two incidents, including a display of a noose and a racially offensive advertisement of an African American man with exaggerated features, were racially hostile but insufficient to permit a trier of fact to conclude that they pervaded the plaintiff's work environment); *Evans v. Pemco Aeroplex, Inc.*, No. CV96-S-2801-S, 1998 WL 1048470 (N.D. Ala. Feb. 23, 1998) (holding that plaintiff failed to present any evidence that nooses and the letters "KKK" had any effect on his work performance and therefore were not sufficiently severe or pervasive to constitute a hostile environment).

For these reasons, Plaintiff's § 1981 claim must be dismissed as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**V.    Dickens's Arkansas Crime Victim Claim Pursuant to ARK. CODE ANN. §
16-118-107 Should be Dismissed if the Court Exercises Supplemental
Jurisdiction.**

Finally, Dickens makes a claim pursuant to ARK. CODE ANN. § 16-118-107, an
Arkansas statute that creates a civil cause of action for crime victims. Under that statute,
any person injured or damaged by another's conduct that would constitute a felony under
Arkansas law can file a civil action to recover damages based on that conduct. In the
Complaint, Dickens alleges that he suffered an assault, battery, and terroristic threatening
from Reynolds. These claims fail to state facts under section 16-118-107 of the Arkansas
Code.

Arkansas courts have held that a claim under this statute requires either a felony
conviction or factual allegations sufficient to establish all elements of a felony. *See Davis
v. State*, 375 Ark. 368, 370 (2009). Plaintiff does not allege that Reynolds was charged
with or convicted of a felony, nor does the Complaint establish facts sufficient to support
a plausible claim of felonious conduct. Indeed, the Complaint's factual allegations do not
show that Defendants' alleged actions satisfy all elements of a felony under Arkansas law.
In fact, the Complaint fails to even specify which felony statute was violated or assert the
requisite factual basis to support such a conclusion. Mere allegations of misconduct,
without reference to a specific felony and its statutory elements, are insufficient to sustain
a section 16-118-107 claim. But dismissal is appropriate for three more reasons.

First, no matter the degree, an assault is not a felony under Arkansas law. *See* ARK.
CODE ANN. §§ 5-13-205 to 207.

Second, to prove a claim for battery, Dickens must allege that Reynolds intended
to cause "serious physical injury." *See* ARK. CODE ANN. §§ 5-13-201 to 202. Under Arkansas
law, a serious physical injury is defined as a "physical injury that creates a substantial risk

of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." ARK. CODE ANN. § 5-1-102(21). Here, Dickens simply alleged that the rope was placed around his neck and that he was temporarily unable to breathe. While OBU and Reynolds dispute the facts as alleged by Mr. Dickens, Dickens still cannot meet the "serious physical injury" standard even if the facts alleged in the Complaint are accepted as true for purposes of this Motion.

Third, Dickens claims that Reynolds's actions constituted terroristic threatening. This claim fails for the same reason as the claim for battery as Dickens would be required to show a serious physical injury. ARK. CODE ANN. § 5-13-301(a)(1)(A). Further, Dickens has not pleaded that Reynolds threatened him in any way. At worst, Reynolds is alleged to have placed a rope around Dickens's neck temporarily, which does not demonstrate an intent by Reynolds to fill Dickens with intense fright—particularly after the prior demonstrations and academic context at issue. *Pinney v. State*, 609 S.W.3d 671, 676 (Ark. App. 2020). Although Dickens's allegations could arguably be considered "physical harm," such harm—even if believed to be true—does not rise to the level of felonious conduct under Arkansas's battery and assault statutes as required under ARK. CODE ANN. § 16-118-107.

Finally, Arkansas courts require that a plaintiff demonstrate a direct injury resulting from the alleged felonious act. *See Douglass v. Dynamic Enters., Inc.*, 315 Ark. 575, 868 S.W.2d 94, 96 (1993). While Plaintiff asserts emotional distress and humiliation, these allegations do not establish the type of tangible harm typically required to sustain a civil claim under section 16-118-107. Courts have rejected claims where plaintiffs failed to show a direct link between the alleged felonious conduct and concrete harm. Because

Plaintiff fails to sufficiently plead an actionable injury stemming from a felony, the claim must be dismissed.

## VI.   OBU is Immune from Suit Under Arkansas's Charitable Immunity Doctrine.

Dickens acknowledged in his Complaint that OBU is a non-profit university in Arkansas that receives a large amount of federal funding. *Dkt. 4*, at ¶¶ 3, 9–10. Taking the allegations in the Complaint as true, OBU is entitled to the charitable immunity defense, and the doctrine of charitable immunity bars Plaintiff's claims. Because charitable immunity is immunity from suit rather than a mere defense to liability, the Court should dismiss Plaintiff's Complaint and relieve OBU from the burdens of further litigation.

Arkansas has long recognized the doctrine of charitable immunity. Over a century ago, in *Fordyce v. Woman's Christian Nat. Library Ass'n*, 96 S.W. 155 (Ark. 1906), the Arkansas Supreme Court affirmed that certain nonprofit and charitable organizations should be shielded from suit in discussing the charitable-immunity doctrine. *Id.* at 158. Subsequently, in *Crossett Health Center v. Croswell*, 256 S.W.2d 548 (Ark. 1953), the Court explained:

> The essence of the doctrine is that agencies, trusts, etc., created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the agency or trust.

The doctrine has remained viable in Arkansas jurisprudence for over one hundred years. Although the Arkansas Supreme Court construes the doctrine narrowly, it has repeatedly confirmed that charitable immunity is recognized and will be applied in appropriate circumstances, like in this case. *See Williams v. Jefferson Hospital Association, Inc.*, 442 S.W.2d 243 (Ark. 1969); *George v. Jefferson Hosp. Ass'n*, 987 S.W.2d 710 (Ark. 1999).

Immunity from suit "is an entitlement not to stand trial or face the other burdens of litigation," whereas immunity from liability is only a defense to damages. *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (Ark. 1987). Thus, once a court determines that the doctrine of charitable immunity applies, the case must be dismissed in its entirety without reaching the merits of the claim. *See Michael v. St. Paul Mercury Indem. Co.*, 92 F.Supp. 140, 142 (W.D. Ark. 1950) ("Plaintiff has alleged that St. Edwards Hospital is a charitable non-profit organization, and this allegation will be accepted as true for purposes of this motion [to dismiss]. Thus, it follows that if, under the law of Arkansas, a charitable nonprofit organization is not subject to suit for tort, plaintiff may proceed directly against the defendant under [ARK. CODE ANN. § 23-79-210].").

Taking Dickens's pleadings to be true for purposes of this motion, OBU is a non-profit university in Arkansas. Thus, under Arkansas's charitable-immunity doctrine, OBU is entitled to "immunity from *suit*, not simply immunity from liability." *St. Bernard's Community Hosp. Corp. v. Cheney*, 2021 Ark. App. 236, 625 S.W.3d 398, 403 (Ark. App. 2021); *see also Low v. Ins. Co. of N. Am.*, 346 Ark. 427, 220 S.W.3d 670 (Ark. 2005). As such, OBU's immunity from suit is an entitlement not to stand trial or face the other burdens of litigation. *St. Bernard's*, 625 S.W.3d at 403.

Because charitable immunity is immunity from suit, not merely from liability, Defendant OBU is entitled to immediate dismissal of all claims. Allowing this case to proceed against OBU—a non-profit charitable organization—would subvert the doctrine's purpose and force OBU to expend charitable resources in litigation rather than on its charitable mission.

<u>CONCLUSION</u>

OBU and Reynolds respectfully request that the Court dismiss all claims brought by Plaintiff Dickens. The allegations in the Complaint fail to establish viable claims for relief under any theory of recovery under each Count. Dickens's negligence claims rely, in part, on a theory of educational malpractice, which is not recognized in Arkansas, and on a claim of negligent supervision, which lacks the necessary factual support to establish duty, foreseeability, or proximate cause. Similarly, his claims of race discrimination under Title VI and 42 U.S.C. § 1981 are not supported by allegations of severe or pervasive harassment or deliberate indifference, as required to state a claim. Additionally, Dickens's claim under the Arkansas felony-tort statute cannot proceed because he failed to articulate facts establishing a felony in Arkansas. The Complaint does not establish the elements necessary for claims of assault, battery, or terroristic threatening.

But the Complaint does establish that OBU is a non-profit Christian university, and as such, it is immune from this suit under Arkansas's well established charitable-immunity doctrine. Thus, the Court should grant this Motion to Dismiss and dismiss Dickens's Complaint in its entirety.

Respectfully submitted,

Abtin Mehdizadegan (#2013136)
Joseph M. Kraska (#2017182)
Jacob Oneal Sutter (#2023040)
**HALL BOOTH SMITH, P.C.**
200 River Market Avenue, Suite 500
Little Rock, Arkansas 72201
Phone:  501-214-3499
Fax:  501-604-5566
E-mail: abtin@hallboothsmith.com
         jkraska@hallboothsmith.com
         jsutter@hallboothsmith.com
